UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

JUSTIN GAMBLE and BRITTANY )
GAMBLE, )
 )
       Plaintiffs, )
 )
vs. )    Case No. CIV-25-396-R
 )
STATE FARM FIRE AND )
CASUALTY COMPANY, )
 )
       Defendant. )

## ORDER

Before the Court is Defendant State Farm Fire and Casualty Company's Partial Motion to Dismiss [Doc. No. 3] Plaintiffs' Petition [Doc. No. 1-5]. Plaintiffs filed a Response [Doc. No. 27] and Defendant Replied [Doc. No. 28]. The matter is now at issue. For the reasons below, the Court grants Defendant's Motion.

## BACKGROUND

Plaintiffs Justin and Brittany Gamble allege the following in their Petition:[1] In or around 2018, Plaintiffs entered an insurance contract with State Farm for replacement cost homeowners' insurance coverage for their property. Compl., ¶¶ 5, 25(a). Plaintiffs entered into this contract through Tyler McCall Insurance Agency, Inc. and Tyler McCall, who owned and operated a State Farm Agency in Tulsa.[2] Id. ¶¶ 7, 13. To procure the Policy and

---

[1] In accordance with this District's nomenclature, the Petition, Doc. No. 1-5, which is the operative pleading, will hereinafter be called the Complaint.

[2] Tyler McCall and Tyler McCall Insurance Agency were formerly Defendants in this action, but the claims against both have been dismissed without prejudice [Doc. No. 25].

coverage, "Agent insured the Insured Property to 100% of its alleged replacement cost value." *Id.* ¶ 25(c). Agent did so without inspecting the Insured Property, verifying its condition, or advising Plaintiffs that it had any defect that might exclude it from replacement cost coverage. *Id.* ¶ 26.

On or about June 18, 2023, a wind- and hailstorm substantially damaged the Insured Property. *Id.* ¶ 40(a). That same day, Plaintiffs submitted a claim to State Farm and uploaded photos of the damage to State Farm's claim-handling website. *Id.* ¶ 40(b). On or about June 27, 2023, a State Farm adjuster inspected the property, considering only "wind" damage. *Id.* ¶ 40(d). On June 30, 2023, State Farm stated it would provide $2,325.71 to cover the property damage, denying Plaintiffs a full roof replacement. *Id.* ¶ 40(e). State Farm attributed the roof's damage to pre-existing, non-covered causes such as wear-and-tear. *Id.* ¶ 40(f). Plaintiffs, "[d]ue to the obvious mishandling of the [c]laim," had multiple roofing companies inspect the roof, and "were repeatedly advised that the Insured Property required . . . a full roof replacement." *Id.* ¶ 40(g)-(h). Around January of 2024, Plaintiffs' contractor insisted that spot-repair to damaged shingles would be insufficient to fix the roof and stated "he would like to either discuss the matter with State Farm or conduct a joint inspection of the roof with an appropriate State Farm employee to clarify to them the extent of the damage." *Id.* ¶ 40(i).

But on February 15, 2024, State Farm "stated it was unwilling to participate in" the joint inspection and told Plaintiffs to obtain a new quote from a different contractor. *Id.* ¶ 40(j). In September of 2024, Plaintiffs asked Agent to help them seek their desired coverage, but Agent informed them convincing State Farm to reconsider the claim would

be a "hail mary." *Id.* ¶ 40(l)-(m). Agent told Plaintiffs that State Farm "'did not see where the roofer sent' documents requested by State Farm" and recommended Plaintiffs hire another contractor and submit or resubmit the documents. *Id.* ¶ 40(n).

Plaintiffs allege State Farm's handling of their claim illustrates State Farm's bad faith and systematic scheme aimed at "maximizing profits for State Farm at the expense of its insureds." *Id.* ¶¶ 10, 40. That scheme, Plaintiffs allege, is as follows: State Farm's agents "almost never perform or acquire an in-person inspection of the property to be insured." *Id.* ¶ 23. Those agents then represent properties as eligible for insurance without proper verification, leaving those like Plaintiffs vulnerable to a misattribution of the source of property damage or later determination by State Farm that their property does not qualify for full coverage. *Id.* ¶¶ 26, 36. State Farm then utilizes "bad-faith claims handling tactics" to "deny valid property insurance claims," such as (1) employing a narrow definition for hail damage that is absent from its policies and hidden from the insured, (2) the misattribution of damage to non-covered causes of loss, (3) misstating the date of loss so it falls outside the one-year limitation for bringing claims against State Farm, (4) arbitrary time limits, and (5) sham reports by engineering firms. *Id.* ¶¶ 34-39.

Plaintiffs filed suit on March 18, 2025, bringing claims against Defendant for breach of contract, bad faith, negligent procurement of insurance, and constructive fraud and negligent misrepresentation. *Id.* ¶¶ 45-79. Plaintiffs allege that, although they brought suit later than the one-year period allowed by the Policy, Defendant's concealment of material facts is fraudulent concealment that tolled the running of any applicable statute of limitations. *Id.* ¶¶ 41-44. In its Partial Motion to Dismiss, Defendant argues that because

Plaintiffs failed to adequately plead fraudulent concealment, the statute of limitations was not tolled, and Plaintiffs' breach of contract claim is time-barred. Doc. No. 3.

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) is proper when a complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a Rule 12(b)(6) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And while the Court "must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still 'must nudge the claim across the line from conceivable or speculative to plausible.'" *Id.* (quoting *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)). "Mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not suffice." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"In addition to the complaint, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Plaintiffs allege a breach of the Policy and frequently reference the Policy in the Complaint. *See generally* Compl.; *id.* ¶¶ 45-52. Furthermore, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF*

*Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997)

(citations omitted). Defendant filed a copy of the Policy, which is central to Plaintiffs'

claims [Doc. No. 3-1]. Neither party disputes its authenticity. The Court thus properly

considers the Policy when evaluating Defendant's Motion.

## DISCUSSION

**I.    As an Initial Matter, State Farm's Policy Language Determines the Limitations Period.** [3]

Defendant argues that pursuant to the Policy, Plaintiffs had one year from the date

of the loss to their property to bring their breach of contract claim. Plaintiffs contend that

the breach of contract claim did not accrue until State Farm breached the contract sometime

after the loss. This, Plaintiffs argue, extends the period during which they could bring suit

past one year from the date of loss.

In Oklahoma, "it is generally understood that a breach of contract action accrues

when the contract is breached." *Morgan v. State Farm Mut. Auto. Ins. Co.*, 488 P.3d 743,

748 (Okla. 2021). But OKLA. STAT. tit. 36 § 3617 permits property insurance contracts to

restrict the time to bring a legal action to "one (1) year from the date of occurrence of the

event resulting in the loss." Courts have regularly upheld this statute's application to

property insurance contracts such as the Policy. *See Zewdie v. Safeco Ins. Co. of Am.*, 304

---

[3] "The Court can address a limitations issue in a motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'" *Marshall v. State Farm Fire & Cas. Co.*, No. CIV-24-00780-JD, 2025 WL 817606, at \*2 (W.D. Okla. Mar. 13, 2025) (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)). In such situations, "the plaintiff has the burden of establishing a factual basis for tolling the statute." *Aldrich*, 627 F.2d at 1041 n.4.

F. Supp. 3d 1101, 1107 n.5 (W.D. Okla. Jan. 19, 2018) (citing § 3617) ("Oklahoma law allows insurers to shorten the time period within which an action for breach of a property insurance policy can be brought."); *Marshall*, 2025 WL 817606, at *2-3; *Root v. State Farm Fire & Cas. Co.*, No. CIV-23-00870-PRW, 2024 WL 5239456, at *1-2 (W.D. Okla. Dec. 27, 2024).

The relevant Policy language provides: "Any action by any party must be started within one year after the date of loss or damage." Doc. No. 3-1 at p. 25. Accordingly, the Policy's contractual limitations period governs the time during which Plaintiffs could bring suit. Because the loss occurred on June 18, 2023, Plaintiffs had one year from that date to bring their breach of contract claim against Defendant.

To avoid this outcome, Plaintiffs argue the Policy's one-year limitations period should not be applied to their claim because public policy "requires that the statute of limitations set by the Oklahoma legislature must control over an arbitrary contractual provision requiring any suit be brought within a year." Doc. No. 27 at pp. 20-21. Plaintiffs base this argument on OKLA. STAT. tit. 36 § 1250.5(7), which provides that "[a]ny policy that specifies a time limit covering damage to a roof due to wind or hail must allow the filing of claims after the first anniversary but no later than twenty-four (24) months after the date of the loss, if the damage is not evident without inspection." This statute, Plaintiffs argue, conflicts with § 3617, which permits insurers to limit the time to bring a legal action to one year from the date of the loss.

Other courts in this district have found no conflict between § 1250.5(7) and § 3617. *See Root*, 2024 WL 5239456, at *2 (holding § 1250.5(7) and § 3617 did not conflict

6

because "one section deals with claims, the other with actions. . . . Accordingly, under the well-pleaded facts in the Complaint, the policy language controls."); *Marshall*, 2025 WL 817606, at \*3 (deciding consistently with *Root* that § 1250.5(7) did not conflict with State Farm's one-year limitations period for bringing suit). This Court agrees: the Policy language controls, and Plaintiffs had one year from the date of the loss, June 18, 2023, to bring their breach of contract claim against Defendant.[4]

## II.     Plaintiffs Failed to Adequately Allege Fraudulent Concealment.

Plaintiffs additionally argue that the contractual limitations period is tolled by Defendant's fraudulent concealment of material facts.

"Fraudulent concealment is an implied exception to the statute of limitations defense." *AMC W. Housing LP v. NIBCO, Inc.*, No. CIV-18-959-D, 2019 WL 4491331, at \*6 (W.D. Okla. Sept. 18, 2019) (citing *Kan. City Life. Ins. Co. v. Nipper*, 51 P.2d 741, 747 (Okla. 1935)). "'[A] party who wrongfully conceals material facts . . . is not allowed to take advantage of his own wrong by pleading the statute, the purpose of which is to prevent wrong and fraud.'" *Id.* (quoting *Nipper*, 51 P.2d at 747). "However, the 'mere failure to disclose that a cause of action exists is not sufficient to prevent the running of the statute. There must be something more; some actual artifice to prevent knowledge of the fact; some

---

[4] The Court notes that § 1250.5(7) applies to damage that is not evident without inspection. Defendant argues Plaintiffs did not claim "they suffered latent roof damage such that Section 1250.5(7) even applies with respect to their time to submit a claim." *See Root*, 2025 WL 5239456, at \*2. This Court agrees: Plaintiffs allege the damage was "patent" and indicate their awareness of it on the date of loss. Compl., ¶ 40(a), (e).

affirmative act of concealment or some misrepresentation to exclude suspicion and prevent inquiry.'" *Id.* (citing *Nipper*, 51 P.2d at 747).

Defendant argues Plaintiffs fail to plead fraudulent concealment because they "do not (and cannot) point to any specific affirmative act by State Farm separate from the bases of their constructive fraud claim." Doc. No. 28 at p. 4.[5] "The Tenth Circuit draws a distinction between acts underlying a plaintiff's potential fraud claim and acts establishing fraudulent concealment to toll the statute of limitations." *NIBCO*, 2019 WL 4491331, at *6 (citing *Legacy Crossing, LLC v. Travis Wolff & Co.*, 229 Fed. App'x 672, 681 (10th Cir. Apr. 9, 2007)). "[U]nder the fraudulent concealment doctrine there must be a separate affirmative act of concealment intended to cover up the original fraudulent act. Otherwise, the exception (tolling for fraudulent concealment) would become the rule. In fraud cases, the limitations period would never begin to run until the defrauding party committed an affirmative act to reveal his fraud." *Legacy Crossing*, 229 Fed. App'x at 681.

Plaintiffs allege Defendant's failure to reveal material facts of the scheme concealed the accrual of any cause of action against Defendant and that the scheme itself "is an artifice." Compl., ¶¶ 42-43. But the scheme cannot form the same basis for Plaintiffs'

---

[5] Defendant argues Federal Rule of Civil Procedure 9(b), requiring fraud claims to be pleaded with particularity, applies to Plaintiffs' fraudulent concealment claim and that Plaintiffs have failed to comply with it. Doc. No. 3 at p. 9 (citing *Dinwiddie v. Suzuki Motor of Am., Inc.*, 111 F. Supp. 3d 1202, 1211-12 (W.D. Okla. May 27, 2015)). Plaintiffs do not dispute that 9(b) applies, instead arguing that their Complaint "spells out the 'who, what, when, and where'" of the alleged fraud. Doc. No. 27 at p. 10. Plaintiffs spend several pages of their Response reiterating their fraud allegations, but do not specifically indicate what affirmative act constituted fraudulent concealment. *Id.* at pp. 10-15.

constructive fraud claim and Plaintiffs' fraudulent concealment claim. *See NIBCO*, 2019 WL 4491331, at \*6 (finding defendant's alleged acts of concealment regarding the defective nature of its products were not separate from plaintiff's fraud claim regarding defendant's fraudulent warranty of those products); *Legacy Crossing*, 229 Fed. App'x at 681 (finding the issuance of an allegedly fraudulent audit report was "the very act upon which Legacy Crossing bases its fraud claim" and did not constitute a separate act sufficient to plead fraudulent concealment).

The acts underlying Plaintiffs' fraud allegations mimic those of their fraudulent concealment allegations and as such fail to plead an affirmative act of concealment. *See* Compl., ¶ 73(g) (claiming Defendant engaged in constructive fraud by, among other things, failing to disclose "any material facts regarding the Scheme") and *id.* ¶¶ 41-44 (claiming Defendant fraudulently "concealed material facts about State Farm's Scheme" which hid the accrual of the cause of action from Plaintiffs).

Moreover, Plaintiffs' allegations indicate they were not reasonably diligent in pursuing their claim. To adequately plead fraudulent concealment, plaintiffs "'must not only show that [they] did not know the facts constituting a cause of action, but that [they] exercised reasonable diligence to ascertain said facts.'" *NIBCO*, 2019 WL 4491331, at \*6 (quoting *Masquat v. DaimlerChrysler Corp.*, 195 P.3d 48, 55 (Okla. 2008)) (citation and quotation marks omitted). "'[I]f the means of knowledge exist and the circumstances are such as to put a man of ordinary prudence on inquiry, it will be held that there was knowledge of what could have been readily ascertained by such inquiry' and a plaintiff cannot successfully assert fraudulent concealment in answer to the defense of the statute

of limitations." *Id.* (quoting *Masquat*, 195 P.3d at 55) (citation and quotation marks omitted).

Plaintiffs' allegations indicate that by February 15, 2024, they were, at least, on inquiry notice of State Farm's breach of contract: They knew of their property damage on June 18, 2023, and knew State Farm, "ignoring the vast majority of patent wind- and hailstorm damage to the home," had at least partially denied their claim by June 30, 2023. Compl., ¶ 40(f). They knew various roofing companies agreed their roof needed extensive repair by January of 2024. They knew Defendant refused to participate in a joint roof inspection in February of 2024. Yet Plaintiffs allege that after Defendant's refusal, they waited over six months to re-attempt to convince State Farm to reconsider their claim and over a year to file suit.

Plaintiffs' "own failure to exercise diligence in pursuing [their] claims against Defendant precludes the application of fraudulent concealment." *NIBCO*, 2019 WL 4491331, at *6 (citing *Daugherty v. Farmers Coop. Ass'n*, 689 P.2d 947, 951 (Okla. 1984)). The Court thus finds Plaintiffs have not pleaded fraudulent concealment sufficient to warrant tolling of the contractual limitations period.[6]

---

[6] Though neither party asserts the argument directly, the briefing contains echoes of a related ground for a delayed start to the limitations period for fraud claims. *See* Doc. No. 3 at pp. 11-12; Doc. No. 28 at p. 4. "[I]f the nature of the original fraudulent act was such that it hid the fraud from the defrauded party, then the limitations period would not begin until the fraud was uncovered." *Legacy Crossing*, 229 Fed. App'x at 681 (citing *Brookshire v. Burkhart*, 283 P. 571, 577-78 (Okla. 1929)). "But that situation is governed by the [Oklahoma fraud] statute's instruction that causes of action for fraud do not accrue until the fraud is discovered, not by the fraudulent concealment doctrine." *Id.* Defendant's partial motion to dismiss and the briefings focus upon the breach of contract claim and the Court will do the same here.

### III.    Defendant Did Not Waive the Contractual Limitations Period.

Lastly, Plaintiffs argue Defendant waived the one-year contractual limitations period.

> Oklahoma does recognize that an insurer can waive its ability to assert a limitations defense in certain circumstances. . . . However, the caselaw reveals that the basis for asserting an insurer's conduct amounted to waiver generally is that the insurer's own conduct interrupted the limitations period. . . . Examples of conduct by the insurer that amount to waiver include situations where the insurer leads the insured to believe it will pay a claim, leading the insured to not file suit within the limitations period. . . . Courts have found waiver of the limitations period in other situations where the insurer has displayed "dilatory tactics." . . . The Court does not interpret the caselaw to support [the] argument that mere negotiation of a claim outside the limitations period for a lawsuit can constitute waiver. Instead, the focus is upon whether the insurer's conduct caused the insured to be unable to initiate a lawsuit within the limitations period.

*Marshall*, 2025 WL 817606, at *4 (citing *Zewdie*, 304 F. Supp. 3d at 1108-09) (citations omitted).

Furthermore, where an insurer has waived the limitations period, it merely "'operate[s] to suspend the running of the statute of limitations until denial of liability and . . . thereafter the statute begins to run again and, if insufficient time remains to institute the action within the year, the insured may have a reasonable time thereafter to bring action.'" *Zewdie*, 304 F. Supp. 3d at 1109-10 (quoting *Ins. Co. of N. Am. v. Bd. of Educ. of Indep. Sch. Dist. No. 12*, 196 F.2d 901, 904 (10th Cir. 1952)). *See Roemer v. State Farm Fire & Cas. Co.*, No. 06-CV-0663-CVE-PJC, 2007 WL 527863, at *2-3 (N.D. Okla. Feb. 14, 2007)) (granting motion to dismiss plaintiff's claim as time-barred where State Farm,

even if it had delayed investigation for a time, denied plaintiff's claims three months before the statute of limitations expired).

Plaintiffs allege Defendant's actions entitled them "to the reasonable expectation that State Farm *may* afford . . . their full replacement cost benefits," thus waiving the limitations period. Compl., ¶ 40(n); Doc. No. 27 at p. 17. These actions include Defendant's instructions to Plaintiffs in February of 2024 to get a new contractor and the "textbook delay tactic" in September of 2024 when State Farm essentially told Plaintiffs to "restart the process of appealing a decision on the Claim." Compl., ¶ 40(j)-(n).

Plaintiffs' allegations do not suggest Defendant waived the limitations period by using dilatory tactics or leading them to believe it might fully replace their roof. Instead, they allege State Farm calculated and issued payment for Plaintiffs' loss within mere weeks of Plaintiffs' claim. Furthermore, by February of 2024, when Defendant refused to jointly inspect the property and instructed Plaintiffs to get a new contractor, Plaintiffs were, according to their own allegations, aware Defendant was not going to reconsider their claim. *See id.* ¶ 40(k) ("State Farm's unwillingness to budge . . . demonstrates its commitment to the pre-textual denial of full roof replacements by way of the Scheme.").

Plaintiffs had roughly four months after the events of February of 2024 to bring suit against Defendant and did not. They make no allegations of any communications or actions by Defendant during those four months which might warrant their belief that Defendants would reconsider their claim.[7] The next alleged actions taken by Defendant regarding their

---

[7] In their Response, Plaintiffs assert that "State Farm negotiated settlement of the Claim . . . between June 30, 2023, . . . through June 18, 2024[,] . . . and . . . September 2024." Doc.

claim did not occur until September of 2024, when Plaintiffs once again attempted to convince State Farm to reconsider its decision. Yet again, Plaintiffs fail to allege that their failure to timely file suit should be excused.

## CONCLUSION

Accordingly, Plaintiffs' breach of contract claim is DISMISSED as time-barred. In their Response, Plaintiffs requested the opportunity to amend their Complaint to properly plead fraudulent concealment. Plaintiffs' request is granted. Plaintiffs have fourteen days from the date of this order to file an Amended Complaint.

IT IS SO ORDERED this 24th day of October, 2025.

_David L. Russell_

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

No. 27 at p. 17. Plaintiffs attempt to argue that "State Farm purportedly investigated Plaintiffs' Claim throughout this time." *Id.* This was not included in the Complaint.