## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

JUSTIN GAMBLE and BRITTANY )
GAMBLE, )
                                  )
          **Plaintiffs,** )
                                  )
**vs.** )     **Case No. CIV-25-396-R**
                                  )
**STATE FARM FIRE AND** )
**CASUALTY COMPANY,** )
                                  )
          **Defendant.** )

## ORDER

Before the Court is Defendant State Farm Fire and Casualty Company's partial Motion to Dismiss [Doc. No. 31] Plaintiffs' Amended Complaint [Doc. No. 30] for failure to state a claim. Plaintiffs filed a Response [Doc. No. 37] to which Defendant replied [Doc. No. 38]. The matter is now at issue.

## BACKGROUND

Plaintiffs Justin and Brittany Gamble allege the following in their Amended Complaint: Plaintiffs entered into an insurance contract ("Policy") with State Farm for replacement cost homeowners' insurance coverage for their property. Am. Compl. ¶¶ 2, 21, 28(b)-(d). Plaintiffs entered this Policy through State Farm captive agent Tyler McCall.[1] *Id.* ¶ 28(a)-(d). State Farm and McCall assured Plaintiffs the Policy would provide "full replacement cost coverage that would fully replace their roof in the event of

---

[1] Tyler McCall and Tyler McCall Insurance Agency were formerly Defendants in this action, but the claims against both have been dismissed without prejudice [Doc. No. 25].

its destruction." *Id.* ¶ 28(c). Allegedly, neither McCall nor State Farm verified the Insured Property's condition nor disclosed to Plaintiffs it was ineligible for full replacement cost coverage under State Farm guidelines. *Id.* ¶ 35(b).

On or about June 18, 2023, a tornadic storm substantially damaged the Insured Property. *Id.* ¶ 20(a). Shortly after the storm, Plaintiffs submitted a claim to State Farm and uploaded photos of the damage to State Farm's claims-handling website. *Id.* ¶ 20(d). On or about June 27, 2023, a State Farm adjuster inspected the property and only considered "wind" damage. *Id.* ¶ 20(f). On June 30, 2023, State Farm stated it would only provide $2,325.71 to cover the property damage. *Id.* ¶ 20(h). State Farm attributed the roof's damage to pre-existing, non-covered causes such as wear-and-tear and/or manufacturers' defect but allegedly did not explain this to Plaintiffs. *Id.* ¶ 20(i).

At State Farm's direction and as required by the Policy, Plaintiffs sought to have their roof spot-repaired on or about July 19, 2023. *Id.* ¶ 20(k). At that time, their contractor indicated their home should qualify for a full roof replacement due to the storm damage. *Id.* On or about September 8, 2023, Plaintiffs' contractor requested supplemental coverage for replacing Plaintiffs' roof. *Id.* ¶ 20(l). After numerous attempts to contact State Farm about this request, Plaintiff Justin Gamble spoke with State Farm telephonically on November 3, 2023. *Id.* ¶ 20(l)-(m). During that call, State Farm told Mr. Gamble to have the contractor re-send the supplemental request. *Id.* ¶ 20(m). The contractor did so the following day. *Id.* On December 20, 2023, a State Farm employee visited the Insured Property to determine whether a full roof replacement or spot-repairs were appropriate. *Id.* ¶ 20(n). On or about January 4, 2024, State Farm issued a letter advising Plaintiffs of

shingle types and local vendors so Plaintiffs could hire a roofer to complete spot-repairs. *Id.* Plaintiffs' contractor inspected the Insured Property and advised Plaintiffs spot-repairs could not be performed due to the roof's substantial damage. *Id.* ¶ 20(o). On January 19, 2024, Mr. Gamble requested a joint re-inspection of the home, to which State Farm responded by instructing Plaintiffs to provide additional evidence regarding the contractor's findings. *Id.* ¶ 20(o)-(p).

In or around February of 2024, Plaintiffs' contractor re-inspected the roof and advised them it needed a full replacement. *Id.* ¶ 20(q)-(r). On February 11, 2024, Mr. Gamble once again requested another inspection by State Farm. *Id.* ¶ 20(r). On February 15, 2024, State Farm instructed Plaintiffs to get a new quote from a different contractor. *Id.* ¶ 20(s). Plaintiffs allege that at that point, they still held a sincere and reasonable belief State Farm would make good on its obligations. *Id.* ¶ 20(t).

McCall contacted Plaintiffs on or about August 29, 2024, to assist them with disputing their claim and to schedule a meeting to discuss the situation on September 26, 2024. *Id.* ¶ 20(u). On September 27, 2024, McCall told Plaintiffs State Farm had indicated it never received documents from Plaintiffs' contractor evidencing the basis for the claim dispute. *Id.* That same day, State Farm requested Plaintiffs submit evidence contradicting its claim decision and McCall told Plaintiffs any additional efforts to dispute State Farm's claim decision would be a "hail mary." *Id.* ¶ 20(v)-(w).

Plaintiffs allege State Farm's handling of their claim illustrates State Farm's systematic and pervasive scheme to defraud its insureds. *Id.* ¶ 1. That scheme, Plaintiffs allege, is as follows: State Farm and its agents neglect to verify the condition of an insured

property prior to binding or renewing coverage. *Id.* ¶¶ 32-35(a). Regardless of whether an inspection occurred, neither State Farm nor its agents represent to insureds that their property is ineligible for full replacement cost coverage. *Id.* ¶ 35(a)-(b). Agents instead represent that the insured property is eligible for full coverage. *Id.* ¶ 37(c). This leaves property owners vulnerable to misattribution of the source of property damage or a later determination by State Farm that their property does not qualify for full coverage. *Id.* ¶ 16.

When insureds file a claim for coverage of their property, State Farm then utilizes "bad-faith claims handling tactics" to deny valid claims. *Id.* ¶ 14. These tactics include: (1) employing narrow definitions and restrictive claims handling protocols, (2) misattribution of damage to non-covered causes of loss, (3) misstating the date of loss so it falls outside the one-year limitation for bringing claims against State Farm, and (4) frustrating and delaying claimants' efforts to dispute claim denials. *Id.* ¶¶ 15-18.

Plaintiffs filed suit on March 18, 2025, bringing claims against Defendant for breach of contract, bad faith, negligent procurement of insurance, and constructive fraud and negligent misrepresentation [Doc. No. 1-5, ¶¶ 45-79]. Plaintiffs alleged that although they brought suit later than the one-year period allowed by their Policy, Defendant's concealment of material facts was fraudulent concealment that tolled the running of any applicable limitations period. Defendant filed a Partial Motion to Dismiss the Complaint, arguing that because Plaintiffs failed to adequately plead fraudulent concealment, the statute of limitations was not tolled and Plaintiffs' breach of contract claim was time-barred [Doc. No. 3]. The Court granted Defendant's Motion but provided Plaintiffs with an opportunity to file an Amended Complaint to properly plead fraudulent concealment [Doc.

4

No. 29]. Plaintiffs filed the Amended Complaint. Doc. No. 30. Defendant has again moved for a partial dismissal arguing Plaintiffs fail to plead fraudulent concealment. Doc. No. 31.

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) is proper when a complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a Rule 12(b)(6) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And while the Court "must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still 'must nudge the claim across the line from conceivable or speculative to plausible.'" *Id.* (quoting *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)). "Mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not suffice." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## DISCUSSION

Defendant argues Plaintiffs' breach of contract claim is barred by the one-year limitations period enumerated in the Policy. In a previous Order, this Court found that the Policy's one-year limitations period for bringing a breach of contract claim against Defendant applied. Doc. No. 29 at p. 6. Thus, because the loss occurred on June 18, 2023

(the date of the "tornadic storm"), Plaintiffs had one year from that date to bring their

breach of contract claim against Defendant.[2] *Id.*

Plaintiffs did not bring suit against Defendant until March 18, 2025, nearly two

years after the storm.[3] However, Plaintiffs argue the doctrine of fraudulent concealment

tolls the statute of limitations. "Fraudulent concealment is an implied exception to the

statute of limitations defense." *AMC W. Housing LP v. NIBCO, Inc.*, No. CIV-18-959-D,

2019 WL 4491331, at *6 (W.D. Okla. Sept. 18, 2019) (citing *Kan. City Life. Ins. Co. v.*

*Nipper*, 51 P.2d 741, 747 (Okla. 1935)). "'[A] party who wrongfully conceals material

facts . . . is not allowed to take advantage of his own wrong by pleading the statute, the

purpose of which is to prevent wrong and fraud.'" *Id.* (quoting *Nipper*, 51 P.2d at 747).

"However, the 'mere failure to disclose that a cause of action exists is not sufficient to

prevent the running of the statute. There must be something more; some actual artifice to

---

[2] Plaintiffs' Amended Complaint asserts that because the home continued to sustain
damage from the storm up to and beyond the date of the filing of the Amended Complaint,
State Farm is estopped from enforcing its one-year contractual limitations period. Doc. No.
30, ¶ 57 n.13. But Plaintiffs cite no legal authority supporting their position. Courts have
routinely upheld limitations periods like the one here and calculate the limitations period
from the date of the event resulting in a loss. *See Root v. State Farm Fire & Cas. Co.*, No.
CIV-23-00870-PRW, 2024 WL 5239456, at *1-2 (W.D. Okla. Dec. 27, 2024) (quoting
OKLA. STAT. tit. 36, § 3617) ("Oklahoma law requires property-insurance policies to
provide at least a one-year limitations period for bringing 'an action,' with the clock
starting on 'the date of occurrence of the event resulting in loss.'").

[3] Plaintiffs briefly argue the statute of limitations set by the Oklahoma legislature should
control over State Farm's "arbitrary" contractual limitations period. But other courts in this
district have found "Oklahoma law allows insurers to shorten the time period within which
an action for breach of a property insurance policy can be brought" when examining
contracts with limitations periods like State Farm's. *Zewdie v. Safeco Ins. Co. of Am.*, 304
F. Supp. 3d 1101, 1107 n.5 (W.D. Okla. 2018) (citing OKLA. STAT. tit. 36, § 3617); *see*
*also Marshall v. State Farm Fire & Cas. Co.*, No. CIV-24-00780-JD, 2025 WL 817606, at
*2-3 (W.D. Okla. Mar. 13, 2025).

prevent knowledge of the fact; some affirmative act of concealment or some misrepresentation to exclude suspicion and prevent inquiry.'" *Id.* (citing *Nipper*, 51 P.2d at 747). Furthermore, the "party alleging fraudulent concealment must plead circumstances giving rise to it with particularity."[4] *CashCall, Inc. v. BancFirst*, No. CIV-16-927-W, 2016 WL 9559037, at *4 (W.D. Okla. Dec. 15, 2016) (citation omitted).

Defendant argues Plaintiffs fail to plead fraudulent concealment because they have not alleged a separate, affirmative act by State Farm designed to hide the existence of their claim. "The Tenth Circuit draws a distinction between acts underlying a plaintiff's potential fraud claim and acts establishing fraudulent concealment to toll the statute of limitations." *NIBCO*, 2019 WL 4491331, at *6 (citing *Legacy Crossing, LLC v. Travis Wolff & Co.*, 229 Fed. App'x 672, 681 (10th Cir. Apr. 9, 2007) (unpublished)). "[U]nder the fraudulent concealment doctrine there must be a separate affirmative act of concealment intended to cover up the original fraudulent act. Otherwise, the exception (tolling for fraudulent concealment) would become the rule. In fraud cases, the limitations period would never begin to run until the defrauding party committed an affirmative act to reveal his fraud." *Legacy Crossing*, 229 Fed. App'x at 681.

Plaintiffs assert State Farm affirmatively concealed its scheme by repeatedly asking them to (1) provide additional evidence regarding their contractor's findings and (2) seek

---

[4] Plaintiffs devote a significant portion of their Response to arguments that they have complied with FED. R. CIV. P. 9(b)'s requirement to plead fraud with particularity. But Defendant does not appear to dispute the overall particularity of Plaintiffs' fraud pleadings—instead, it focuses upon Plaintiffs' failure to plead a separate, affirmative act constituting fraud. The Court will likewise focus its analysis.

new quotes and inspections. *See* Am. Compl. ¶ 20(p), (s), (t). These actions, according to Plaintiffs, allowed State Farm to delay and distract them from seeking other recourse.

The scheme itself cannot form the same basis for Plaintiffs' constructive fraud and fraudulent concealment claims. *See NIBCO*, 2019 WL 4491331, at *6 (finding defendant's alleged acts of concealment regarding the defective nature of its products were not separate from plaintiff's fraud claim regarding defendant's fraudulent warranty of those products); *Legacy Crossing*, 229 Fed. App'x at 681 (finding the issuance of an allegedly fraudulent audit report was "the very act upon which Legacy Crossing bases its fraud claim" and did not constitute a separate act sufficient to plead fraudulent concealment). Plaintiffs here have alleged that Defendant's delay tactics constitute both a part of its scheme to defraud insureds and affirmative acts that constitute fraudulent concealment. *See* Am. Compl. ¶ 87(f) (claiming Defendant engaged in constructive fraud by, among other things, failing to disclose its bad faith claims-handling methods, including delay tactics) and *id.* ¶¶ 54-59 (claiming State Farm fraudulently concealed its misconduct through delay tactics). Plaintiffs have failed to plead a separate, affirmative act of concealment and have thus failed to sufficiently plead fraudulent concealment such that the limitations period is tolled.

Defendant further argues that even if Plaintiffs adequately pleaded fraudulent concealment, tolling still fails because they did not exercise reasonable diligence within the one-year limitations period. To adequately plead fraudulent concealment, plaintiffs "'must not only show that [they] did not know the facts constituting a cause of action, but that [they] exercised reasonable diligence to ascertain said facts.'" *NIBCO*, 2019 WL 4491331, at *6 (quoting *Masquat v. DaimlerChrysler Corp.*, 195 P.3d 48, 55 (Okla. 2008))

8

(citation and quotation marks omitted). "'[I]f the means of knowledge exist and the circumstances are such as to put a man of ordinary prudence on inquiry, it will be held that there was knowledge of what could have been readily ascertained by such inquiry' and a plaintiff cannot successfully assert fraudulent concealment in answer to the defense of the statute of limitations." *Id.* (quoting *Masquat*, 195 P.3d at 55) (citation and quotation marks omitted).

Generally, "'[w]hether plaintiffs have used diligence in discovery, or should, as reasonably prudent persons have been put on inquiry and investigation from what they heard, or knew, [is] a question to be determined in the trial court, on the basis of the facts and circumstances of the particular case.'" *Lavender v. Craig Gen. Hosp.*, 308 P.3d 1071, 1077 (Okla. Civ. App. 2013) (quoting *Wing v. Lorton*, 261 P.3d 1122, 1127 (Okla. 2011)). "'Where reasonable persons might reach different inferences or conclusions involving the underlying disputed facts about an injury's discovery, the question of when the plaintiff knew or should have known is a question of fact for the trier of fact to decide.'" *Id.* (quoting *Woods v. Prestwick House, Inc.*, 247 P.3d 1183, 1192 (Okla. 2011)). However, "[w]hile the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute." *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) (citations omitted).

In this Court's previous Order, it found Plaintiffs failed to plead reasonable diligence in pursuing their claim. Doc. No. 29. The Court focused on Plaintiffs' alleged knowledge: Plaintiffs knew of their property damage on June 18, 2023, and knew State

Farm had at least partially denied their claim by June 30, 2023. They knew various roofing companies had agreed their roof needed extensive repair by January of 2024. They knew Defendant refused to participate in a joint roof inspection on February 15, 2024. Furthermore, Plaintiffs failed to allege any other actions taken by State Farm until September of 2024, after Plaintiffs waited over six months to re-attempt to convince State Farm to reconsider their claim. Based on these and other allegations in the original Complaint, the Court found Plaintiffs were, at least, on inquiry notice of State Farm's breach of contract by February 15, 2024.

Now, Plaintiffs assert they were not on "inquiry notice" on February 15, 2024, due to State Farm's requests for additional information at that time.[5] Plaintiffs argue they were merely following State Farm's instructions and maintained a sincere and reasonable belief that State Farm would fulfil its obligations after February 15, 2024. Am. Compl. ¶ 20(t). It wasn't until September 27, 2024, according to Plaintiffs, that they realized State Farm's conduct was actionable.

Plaintiffs have not provided a factual basis for their delay in bringing suit.[6] They do not assert any actions taken by State Farm between February 15 and June of 2024 that

---

[5] Under their Policy, they were obligated to provide State Farm with requested documents as often as State Farm reasonably required. Doc. No. 37, at p. 26.

[6] Plaintiffs also assert that Defendant continuing to investigate the claim between February 15, 2024, and September of 2024 presents a question of fact for whether waiver of the limitations period occurred. As the Court discusses above, Plaintiffs have failed to plead any affirmative acts of concealment or, indeed, *any* acts by State Farm in that time period that entitled Plaintiffs to a reasonable belief that State Farm may have fulfilled its obligations. Though Plaintiffs generally assert that State Farm continued to investigate from February to September, their vague assertions do not support their waiver argument.

might indicate State Farm continued to investigate up to and through the one-year limitations period. *Compare with Maher v. State Farm*, No. CJ-2024-8245, Order on Partial Motion to Dismiss (Okla. Cnty. Dist. Ct., Nov. 13, 2025) (Andrews, D.J.) (denying motion to dismiss based on one-year contractual limitations period where State Farm conducted a second inspection of the insured property *four days* before the one-year period ran). Instead, by February 15, 2024, both State Farm and Plaintiffs' contractor had inspected the property at least twice; State Farm continued to insist only spot-repairs were necessary while Plaintiffs' contractor insisted a full roof replacement was necessary. Furthermore, State Farm had requested further information from Plaintiffs or further inspections by contractors at least three times, each time to no avail for Plaintiffs.

Even if Plaintiffs were not on inquiry notice *precisely* on February 15, 2024, the four subsequent months during which no action was taken by State Farm, and it seems, no action was taken by Plaintiffs, provided Plaintiffs ample opportunity to discover their injury and bring suit. State Farm's pattern and repeated refusal to take meaningful further action on Plaintiffs' claim months after it denied full coverage thus put Plaintiffs on inquiry notice of their cause of action well before the limitations period expired.[7] Nevertheless,

---

[7] Plaintiffs rely on the Unfair Claims Settlement Practice Act to argue State Farm's delay tactics toll the limitations period. The UCSPA requires insurers to inform insureds if investigation into an insurance claim cannot be completed within sixty days. OKLA. STAT. tit. 36, § 1250.7(C). The Tenth Circuit has already examined an insured's arguments that its insurer was estopped from asserting its contractual limitations period due to its violation of the notice provisions of the UCSPA. The Court held that even if the UCSPA's notice provisions had been included in the contract at issue, the error would be harmless because no private right of action was included in the statute. *Council Oaks Learning Campus, Inc. v. Farmington Cas. Co.*, 2000 WL 376623, at *3-4 (10th Cir. Apr. 13, 2000) (unpublished).

Plaintiffs chose to wait until September of 2024, long after the limitations period expired, to bring suit.

Plaintiffs request an additional opportunity to amend should the Court find the allegations in their Amended Complaint fail to plead fraudulent concealment. Even though courts freely grant leave to amend "when justice so requires," FED. R. CIV. P. 15(a)(2), leave to amend may not be granted for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiffs have failed to adequately support their request to amend. Furthermore, they have already had one opportunity to amend. After the Court's Order indicating how and why Plaintiffs had failed to plead an affirmative act of concealment, it gave Plaintiffs leave to file their Amended Complaint, which contains the same deficiencies. Plaintiff's request for leave to amend is therefore denied.

Accordingly, Defendant's Partial Motion to Dismiss is GRANTED. Plaintiffs' breach of contract claim against Defendant is DISMISSED

IT IS SO ORDERED this 21st day of January, 2026.

**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**